UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-139-HRW

DEWAYNE BRAND                                                                                          PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

ROBERT STILSON, ET AL.                                                                          DEFENDANTS

Dewayne Brand, an inmate who is confined in the Eastern Kentucky Correctional Complex ("EKCC") in West Liberty, Kentucky, has filed a civil rights complaint under 42 U.S.C. §1983. He has filed a motion to proceed *in forma pauperis*, which motion the Court will address by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. §1915(e)(2), the district

court can dismiss a case at any time if it determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

## NAMED DEFENDANTS

The plaintiff names the following defendants: (1) John Motley, Warden of the EKCC; and (2) Kathy Litteral, whom the plaintiff identifies as the Director of Programs/Grievance Chairperson of the EKCC; and (3) Michelle Vance, whom the plaintiff identifies as the Classification Treatment Officer at the EKCC.

## RELIEF REQUESTED

The plaintiff seeks monetary damages and punitive damages. He also seeks injunctive relief in the form of an order directing Warden Motley to comply with all policies established by the Kentucky Department of Corrections.

## CLAIMS

The plaintiff alleges that with regard to his housing and classification issues, EKCC officials discriminated against him on the basis of his African American race when they refused to allow him to be housed with another inmate of his choosing. That claim would fall under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Next, the plaintiff alleges that after he filed grievances complaining about the alleged racial discrimination, EKCC officials retaliated against him by planning his transfer to another prison. That claim would fall under the First Amendment of the United States Constitution.

Finally, the plaintiff complains about the manner in which he and an EKCC official addressed him when he (plaintiff) inquired about the status of a pending effort to transfer him

to another prison. That claim would fall under the Eighth Amendment of the United States Constitution.

ALLEGATIONS OF THE COMPLAINT

In support of his §1983 complaint, the plaintiff has filed a number of exhibits collectively docketed as Record No. 5. Most of these documents relate to four administrative grievances which the plaintiff filed concerning actions at the EKCC. The Court has summarized the four issues about which the plaintiff complained.

1. Grievance No. 05-575 (Racial Discrimination)

On August 4, 2005, the plaintiff sought permission to be placed in a cell with inmate Troy Lear. Lear, who is white, and the plaintiff had previously been cellmates. The staff responded on August 10, 2005, that the plaintiff's request would be considered in the order in which it received, older requests being taken first. The staff member further noted that cell moves are done at the discretion of the Unit Director. The staff member acknowledged that a "'black/white move' is harder to do than a same race move."

The Grievance Committee agreed with the staff member's informal resolution. The plaintiff appealed to the warden. On September 8, 2005, Warden Motley concluded that there was no evidence of prejudice against either the plaintiff or Inmate Lear. Motley reiterated that moves are conducted "at the discretion of the Unit Director." Motley agreed with the staff member that a "black/white" move is harder to do than a "same race" move.

Kentucky Department of Corrections Commissioner John D. Rees upheld Warden Motley's decision on September 26, 2005, for the same reasons Motley listed. He added that

institutional needs, seniority, and medical issues also factor into bed/cell assignments. He agreed there was no evidence of racial discrimination.

### 2. Grievance No. 05-576 (Verbal Abuse Claim)

In this grievance filed on August 4, 2005, the plaintiff complained about the manner in which Unit Administrator Bill Hester spoke to him and to Inmate Lear. Plaintiff alleges Hester was unpleasant and used profanity when he (plaintiff) inquired about the status of his request "to move."

The Informal Resolution Stage resulted in a rejection of Plaintiff's grievance, as did the Grievance Committee's disposition. Warden Motley agreed with the two previous dispositions and denied the appeal on September 8, 2005. Commissioner Rees rejected the plaintiff's final appeal on September 21, 2005, stating that Plaintiff lodged his request to be moved "during critical yard movement activity and was thus inappropriate at that time."

### 3. Grievance No. 05-587 (Retaliatory Transfer Claim)

Plaintiff filed a third grievance on August 5, 2005. Plaintiff alleged that when Unit Administrator Hester discovered that he had filed a grievance complaining about Hester's attitude, Hester threatened to reclassify the plaintiff. Plaintiff complained that he would be transferred and asked that the transfer not transpire. In essence, the plaintiff alleged retaliation by Hester.

Hester denied the claim. The Grievance Committee concluded that because the plaintiff was no longer in Hester's unit, his complaints were moot. Warden Motley agreed by decision dated September 8, 2005. Commissioner Rees adopted Motley's findings on September 21, 2005, and further disputed that the transfer was in retaliation for the filing of the grievance. In

4

his response, Rees denied the plaintiff's request to stop the transfer to the Little Sandy Correctional Complex (LSCC).

### 4. Grievance No. 05-624 (Racial Discrimination Claim)

In this grievance filed on August 17, 2005, the plaintiff complained about alleged racial discrimination related to his request to room with Inmate Lear. The staff member responded that this issue had previously been addressed in Grievance #05-575. Plaintiff took no further action concerning Grievance No. 05-624.

## DISCUSSION

### 1. Grievance No. 05-575 (Cellmate Request/Racial Discrimination Claim)

The plaintiff complained that he was repeatedly denied permission to share a cell with Inmate Troy Lear. To the extent that he alleges the denial was racially motivated because he (plaintiff) is African American and Lear is white, the claim could be classified as falling under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

The plaintiff points to the fact that both an EKCC staff member and the EKCC warden acknowledged that the differing racial origin complicated the requested cell assignment. Despite the prison's recognition that a racial issue may have complicated the issue, the plaintiff has not alleged the existence of a constitutional claim under either the Eighth Amendment (relating to the conditions of confinement) or under the Fourteenth Amendment (relating to equal protection of law).

Well settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, security classification, or housing assignment. *See Olim*

*v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976). Even though an EKCC staff member and the warden suggest that racial concerns may have impacted on the plaintiff's request to share a cell with Lear, the plaintiff asserts no viable equal protection claim in his complaint. Lacking a constitutionally protected right to be housed in any particular cell, the plaintiff cannot complain about *why* he was denied permission to share a cell with Inmate Lear.

Assessing the facts under the Eighth Amendment would not salvage the claim. In 1995, the Supreme Court developed a rule for analyzing "conditions of confinement" claims which renders a fatal blow to the plaintiff's claim. The Supreme Court determined that for a prisoner, a deprivation of a legally cognizable liberty interest occurs only when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995). Citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), the Supreme Court held in *Sandin* that the Due Process Clause is aimed at protecting no more than "the most basic liberty interests" in prisoners, and that it will not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates. *Sandin v. Conner*, 515 U.S. at 478.

Under the *Sandin* analysis, housing assignments and classification decisions (such as extended placement in disciplinary segregation and transfers to higher security prisons) have been upheld as the "ordinary incidents of prison life." *See Merchant v. Hawk-Sawyer*, 37 Fed. Appx. 143, 145 (6th Cir. (Ky.), May 7, 2002) (not selected for publication in the Federal

6

Reporter) (Merchant's maximum security classification, 21-month confinement in the special housing unit and transfer to a more secure facility were simply the "ordinary incidents of prison life," and did not implicate a protected liberty interest). These decisions were far more restrictive than Plaintiff Brand's complaint about being denied the cellmate of his choice.

The plaintiff has not alleged the denial of any basic human needs, such as water, food, access to the general population, access to religious services, or access to recreational activities. The law is clear that inmates have no legally protected liberty interest in either the location of their confinement or in their classification and housing status. Under *Sandin*'s framework, the Court cannot conclude that the deprivation about which the plaintiff complains (being denied the cellmate of his choice) raises a valid constitutional claim under the Eighth Amendment. The Court will dismiss this claim as frivolous. 28 U.S.C. §1915(e)(2)(2)(ii).

2. Grievance No. 05-576 (Verbal Abuse Claim)

To the extent the plaintiff depicts his treatment at the hands of Unit Administrator Hester as verbal abuse, harassment or intimidation, he fails to state a valid Eighth Amendment claim. Although verbal abuse by prison officials is not condoned, the law is clear that even if the allegation of verbal abuse is true, verbal abuse by itself does not violate the Constitution. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1981); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987). Mere vituperation or disparagement, no matter how repugnant, cannot amount to violation of a federal constitutional right. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998 (1983); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

Additionally, the exhibits relating to exhaustion of plaintiff's Grievance No. 05-587 reflect that after the plaintiff complained about Unit Administrator Hester's attitude toward him,

the plaintiff was removed from Hester's unit. Thus, the plaintiff's concern that he would continue to be subjected to further verbal abuse was addressed and disposed of by the decision to put him in another unit. The plaintiff's claim concerning verbal abuse is dismissed.

### 3. Grievance No. 05-587 (Retaliatory Transfer Claim)

The plaintiff complains that Unit Administrator Hester threatened to transfer the plaintiff when he (Hester) discovered that the plaintiff had filed a grievance complaining about Hester's attitude and alleged hostility toward the plaintiff. This claim fails for several reasons.

First, the plaintiff alleges that over his objection, he was approved for a transfer from the EKCC to the LSCC over a year ago, in August, 2005. In his complaint filed in this Court on September 29, 2006, the plaintiff listed his current address as being the EKCC.

Although the documents attached to the complaint do verify that EKCC officials discussed and approved the plaintiff's transfer, the fact remains that the plaintiff was *not* in fact transferred. He remains confined in the EKCC. The plaintiff alleges that the EKCC reconsidered transferring him to the LSCC only because he was temporarily confined in segregation. The reason behind the decision not to transfer him is irrelevant. The claim has been moot for over a year and is now moot. Accordingly, the Court will dismiss that claim.

Second, even if the claim had not been moot, it is time-barred. Commissioner Rees denied the plaintiff's final administrative appeal on September 21, 2005. The date on which the plaintiff signed his complaint was over a year later, on September **26**, 2006. Kentucky's one-year statute of limitations set forth in K.R.S. §413.140(1)(a) applies to civil rights claims arising in Kentucky. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("Accordingly, we conclude that section 1983 actions in Kentucky are limited by the one-year statute of limitations

found in section 413.140(1)(a)."); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990). Thus, the plaintiff's moot claims relating to the abandoned transfer are untimely.

Third, even if the claim was not moot and was timely, it would have failed on the merits. A retaliation claim under the First Amendment has three elements: (1) the plaintiff engaged in protected conduct; (2) defendant took an adverse action against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first two elements, that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

The plaintiff would not have established a valid retaliation claim, because a transfer to another prison facility does not qualify as adverse action. "In *Meachum v. Fano*, 427 U.S.215, 223, 96 S. Ct. 2532, 2538 (1976), the Supreme Court found that the transfer of a prisoner from one institution to another was unprotected by 'the Due Process Clause in and of itself,' even though the change in facilities involved a significant modification in conditions of confinement, later characterized by the Court as a 'grievous loss.'" *Hewitt vs. Helms*, 459 U.S. at 467-68, (citing *Moody v. Daggett*, 429 U.S. 88, n.9). Even if the plaintiff had been transferred to the LSCC, the transfer would not have qualified as "adverse action" for purposes of establishing a First Amendment retaliation claim.

4. <u>Grievance No. 05-624 (Racial Discrimination Claim)</u>

9

This claim reiterates the claim asserted in Grievance No. 05-575. The Court has evaluated and dismissed that racial discrimination claim as being non-meritorious. No further discussion of this duplicative claim is required.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)     This action [06-CV-139-HRW] is **DISMISSED WITH PREJUDICE**, *sua sponte,* from the docket of the Court.

(2)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This October 11, 2006.

Signed By:
Henry R Wilhoit Jr.
United States District Judge